UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

----oo0oo----

| | |
|---|---|
| LAURIE DETTRICH, an individual, | NO. CIV. 1:10-434 WBS |
| Plaintiff, | |
| v. | MEMORANDUM AND ORDER RE: MOTION TO DISMISS |
| ERIC K. SHINSEKI, Secretary, United States Department of Veterans Affairs, | |
| Defendant. | |

----oo0oo----

Plaintiff Laurie Dettrich brought this action against defendant Eric R. Shinseki, Secretary of the United States Department of Veterans Affairs, alleging disability discrimination and failure to accommodate under the Rehabilitation Act of 1973, 29 U.S.C. §§ 791-794f, wrongful discharge, intentional and/or negligent infliction of emotional distress, and breach of the implied covenant of good faith and fair dealing. Defendant now moves to dismiss plaintiff's First Amended Complaint ("FAC") for lack of subject matter jurisdiction

pursuant to Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim pursuant to Rule 12(b)(6). Defendant also requests that the court strike portions of the FAC pursuant to Rule 12(f).

I.  Factual and Procedural Background

On June 22, 2008, plaintiff was hired as a staff nurse at the VA Medical Center ("VAMC") in Boise, Idaho. (FAC ¶ 10 (Docket No. 27).) Prior to her employment with the VAMC, plaintiff served for twenty years as a Registered Nurse in the United States Air Force. (Id. ¶ 6.) During her military service, plaintiff suffered a traumatic brain injury, which resulted in her honorable discharge from the military and allegedly substantially limits her major life activities. (Id. ¶¶ 8-9.) Plaintiff alleges that her injury did not, however, preclude her from working as a Registered Nurse and performing all essential functions of her job at the VAMC with or without reasonable accommodation. (Id. ¶¶ 8, 22.)

When the VAMC hired plaintiff, it was allegedly aware of her disability. (Id. ¶ 11). Additionally, the VAMC allegedly questioned plaintiff about her disability prior to and during her employment interview. (Id.)

Plaintiff avers that beginning in November of 2008, she was subjected to a hostile work environment and retaliation. (Id. ¶ 18.) The hostility and retaliation allegedly escalated in March of 2009 and continued throughout the remainder of her employment with the VAMC. (Id.) Plaintiff avers that incidents contributing to the environment included: an "intervention" by co-workers, wherein plaintiff was subject to various criticisms;

circulation of rumors by plaintiff's co-workers concerning plaintiff's psychological state, personal relationships, and medical records; and false allegations concerning plaintiff's work habits, which purportedly resulted in a reprimand by plaintiff's supervisor, Molly Kusik. (Id.)

On April 21, 2009, plaintiff allegedly sought accommodation of her disability by requesting reassignment to the Women's Health Veteran Program ("WHVP"). (Id. ¶ 13.) Plaintiff sought reassignment because she was the sole Registered Nurse serving on her team at the time, which allegedly precluded her from conferring with other licensed professionals and provided no back-up support when she was out of the office for medical appointments. (Id.) Plaintiff alleges that the WHVP position would not have required her to perform tasks that required a second licensed professional's opinion and would not have required a replacement nurse when plaintiff was absent for medical appointments. (Id.) The VAMC denied plaintiff's request for reassignment. (Id.) That same day, plaintiff filed a report with the Equal Employment Opportunity Commission ("EEOC"), seeking assistance with the VAMC's denial of plaintiff's request for accommodation. (Id. ¶ 14.)

On June 3, 2009, plaintiff made a second request for reassignment and also requested a part-time schedule. (Id. ¶ 16.) After allegedly requesting and receiving supplemental documentation from plaintiff, the VAMC "ignored" plaintiff's request. (Id.)

Later that month, plaintiff suspected unauthorized access of her personal medical records and requested a list of

all individuals with access to them. (Id. ¶ 17.) From this list, plaintiff allegedly became aware that fellow VAMC employees had accessed the records without proper authorization. (Id.)

On June 19, 2009, plaintiff was subject to a Professional Standards Board review, which allegedly arose from false allegations made in a Proficiency Report by plaintiff's supervisor and a medical assistant. (Id. ¶ 19.) Following the review, the Board recommended accommodations for plaintiff, including a "Performance Improvement Plan" and temporary reassignment to a separate department with a second Registered Nurse on duty. (Id. ¶ 20.) The VAMC allegedly did not follow the Board's recommendation and instead placed plaintiff on "authorized absence status," ultimately terminating her employment. (Id. ¶ 21.)

Defendant originally moved to dismiss plaintiff's Complaint on January 7, 2011. (Docket No. 5.) Plaintiff subsequently filed her FAC, which directly responded to some of the alleged deficiencies set forth in defendant's motion. (Docket No. 23.) Defendant filed the instant motion to dismiss plaintiff's FAC on May 31, 2011, incorporating by reference the entire January 7 motion and asserting no new arguments in favor of dismissal.

II. Discussion

    A. Motion to Dismiss

On a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure Rule 12(b)(1), the plaintiff bears the burden of establishing a jurisdictional basis for her claim. Kokkonen v. Guardian Life Ins. Co. of Am.,

511 U.S. 375, 377 (1994). Because "[f]ederal courts are courts of limited jurisdiction" that "possess only that power authorized by Constitution and statute," id., a court must dismiss claims over which it has no jurisdiction. Fed. R. Civ. P. 12(h)(3). The court is presumed to lack jurisdiction unless the contrary appears affirmatively from the record. DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 342 n.3 (2006).

On a motion to dismiss for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6), the court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984); Cruz v. Beto, 405 U.S. 319, 322 (1972). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, --- U.S. ----, ----, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

    1. <u>Disability Discrimination and Failure to Accommodate Claims under the Rehabilitation Act</u>

Defendant seeks dismissal of plaintiff's claims for disability discrimination and failure to accommodate. In plaintiff's original Complaint, she sought to bring these claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12183. Defendant's January 7 motion to dismiss sought dismissal on the ground that the Rehabilitation Act provides plaintiff's exclusive remedy for discrimination. On May 26,

2011, plaintiff amended her complaint, alleging these claims under the Rehabilitation Act and omitting all reference to the ADA. When defendant filed the instant motion to dismiss, he incorporated the January 7 motion in its entirety, but asserted no new arguments supporting dismissal of plaintiff's disability discrimination or failure to accommodate claims.

Because the instant motion offers no new arguments in support of dismissal and because plaintiff's FAC, the operative complaint, asserts claims under the Rehabilitation Act rather than the ADA, defendant's motion to dismiss plaintiff's claims for disability discrimination and failure to accommodate will be denied.

### 2. State Law Claims

Plaintiff, as a former federal employee, attempts to bring several state law claims against her employer. As a preliminary matter, the court notes that agencies of the United States cannot be sued unless Congress expressly waives sovereign immunity. United States v. Dalm, 494 U.S. 596, 608 (1990). Though the Federal Tort Claims Act (28 U.S.C. § 1346(b)) serves as a limited waiver of the United States' sovereign immunity, the Supreme Court has made clear that statutes governing federal employment significantly restrict a plaintiff's ability to bring employment-related suits. Biermann v. United States, 67 F. Supp. 2d 1057, 1061 (E.D. Mo. 1999) ("Generally, . . . federal employees are barred from bringing claims against the government when the claims 'arise out of an employment relationship that is governed by comprehensive procedural and substantive provisions giving meaningful remedies against the United States.'") (quoting

Bush v. Lucas, 462 U.S. 367, 368 (1983)).

Specifically, a federal employee must pursue employment-related claims under the Civil Service Reform Act of 1978 ("CSRA"), Pub. L. No. 95-454, 92 Stat. 1111 (codified in scattered sections of 5 U.S.C.), personal injury claims under the Federal Employees' Compensation Act ("FECA"), 5 U.S.C. §§ 8101-8193, and disability discrimination claims under the Rehabilitation Act.[1]  See Lockheed Aircraft Corp. v. United States, 460 U.S. 190, 193-94 (1983) (FECA "was designed to protect the Government from suits under statutes, such as the Federal Tort Claims Act, that had been enacted to waive the Government's sovereign immunity."); Mangano v. United States, 529 F.3d 1243, 1246 (9th Cir. 2008) ("[W]here Congress has provided a process[, the CSRA,] for processing prohibited personnel practices, other potential employee remedies are preempted."); Spence v. Straw, 54 F.3d 196, 197 (3d Cir. 1995) (The Rehabilitation Act "is the exclusive means by which a plaintiff may raise claims against federal agencies relating to handicap discrimination.").

### a.  Wrongful Discharge Claim

Plaintiff's third cause of action seeks relief for wrongful discharge under state law.  In Idaho, an employer may be liable for the wrongful termination of an employee if such

---

[1] When asked at oral argument whether plaintiff could cite any case in which a claimant was able to bring suit against a federal employer for state tort claims arising in the employment context, plaintiff cited only one First Circuit decision: Ellenwood v. Exxon Shipping Co., 984 F.2d 1270 (1st Cir. 1993).  The defendant in Ellenwood, however, was not an agency or department of the government – it was a government contractor.

7

termination contravenes public policy. Edmondson v. Shearer Lumber Prods., 139 Idaho 172, 176 (2003). Idaho public policy derives from the state constitution and statutes. Mallonee v. Idaho, 139 Idaho 615, 621 (2004). Plaintiff avers that the VAMC terminated her employment based on her disability, which was a violation of public policy because it violated the Rehabilitation Act. (FAC ¶ 39.) She does not allege any violations of public policy other than those alleged in her Rehabilitation Act claims.

As explained above, the Rehabilitation Act is the exclusive remedy for disability discrimination claims by federal employees. See Johnston v. Horne, 875 F.2d 1415, 1420 (9th Cir. 1989), abrogated on other grounds by Irwin v. Dep't of Veterans Affairs, 498 U.S. 89 (1990). Cf. McWilliams v. Latah Sanitation, Inc., 554 F. Supp. 2d 1165, 1185 (D. Idaho 2008) ("[S]tatutory remedies under the ADA for the same allegations asserted within a wrongful discharge claim necessarily preclude the latter, separate, duplicative claim."). Accordingly, plaintiff's claim for wrongful discharge will be dismissed.

    b. <u>Negligent and/or Intentional Infliction of Emotional Distress Claim</u>

      i. <u>CSRA</u>

The CSRA "governs the relationship between the federal government and its employees." Sculimbrene v. Reno, 158 F. Supp. 2d 1, 5 (D.D.C. 2001). The Act "provides a comprehensive scheme intended to balance the right of federal employees to obtain redress for employment-related grievances against the interest in promoting an efficiently run civil service," Lehman v. Morrissey, 779 F.2d 526, 527 (9th Cir. 1985), and "offers an administrative

remedy to federal employees who allege prohibited personnel practices." Saul v. United States, 928 F.2d 829, 833 (9th Cir. 1991).

The remedies provided under the CSRA are "the comprehensive and exclusive procedures for settling work-related controversies between federal civil service employees and the federal government." Ross v. Runyon, 858 F. Supp. 630, 635 (S.D. Tex. 1994). Thus, the CSRA preempts those common law tort claims based on prohibited personnel practices covered by the Act. Saul, 928 F.2d at 841-43 (state law tort claims were preempted by CSRA in order to "prevent them from conflicting with the remedial system that Congress prescribed for federal employees").

The "prohibited personnel practices" of the CSRA include taking "personnel action[s]" that discriminate "for or against any employee or applicant for employment . . . on the basis of a handicapping condition, as prohibited [by] the Rehabilitation Act of 1973."[2] 5 U.S.C. § 2302(b)(1)(D).

Plaintiff asserts that her emotional distress claim is based on conduct outside the ambit of CSRA protection: "co-workers accessing her private psychiatric records and disseminating such information amongst the staff; co-workers holding an 'intervention' with Dettrich to criticize her for forgetting things and making mistakes; co-workers making a number of false allegations regarding Plaintiff's work habits; and

---

[2] The CSRA expressly preserves a federal employee's right of action under various antidiscrimination statutes, including the Rehabilitation Act. 5 U.S.C. § 2302(d). Plaintiff's Rehabilitation Act claims set forth in counts one and two of the FAC are thus not preempted by the CSRA. See id. § 2302(d)(4).

9

inappropriate questions asked during Dettrich's interview process." (Pl.'s Resp. to Def.'s Mot. to Dismiss at 10 (Docket No. 13).)

Each of the allegations, however, falls well within the scope of the CSRA. The "intervention" at issue, dissemination of confidential information contained in personnel records, purportedly wrongful questioning during an interview, and false allegations regarding plaintiff's work habits which, according to plaintiff's FAC, resulted in a reprimand by plaintiff's supervisor and a subsequent Professional Standards Board review, are covered by several of the CSRA's definitions of "personnel action": (1) a disciplinary or corrective action; (2) a performance evaluation; or (3) any other significant change in duties, responsibilities, or working conditions. 5 U.S.C. § 2302(a)(2)(A); see also Saul, 928 F.2d at 834 (rejecting "cramped construction of 'personnel action'").

Plaintiff also attempts to avoid CSRA preemption by arguing that her emotional distress arose from the conduct of co-workers rather than a supervisor. (Pl.'s Resp. to Def.'s Mot. to Dismiss at 9-10.) Prohibited personnel practices may be committed by "[a]ny employee who has authority to take, direct others to take, recommend, or approve any personnel action." 5 U.S.C. § 2302(b). The Ninth Circuit interprets this definition broadly, and a claim does not escape application of the CSRA simply by virtue of the fact that an unlawful act was committed

by a subordinate employee rather than a supervisor.[3]  See Mahtesian v. Lee, 406 F.3d 1131, 1134 (9th Cir. 2005).  Because plaintiff's allegations regarding her co-workers' actions fall within the definition of prohibited personnel practices, the CSRA preempts state law tort claims based on those allegations.

Because the CSRA preempts plaintiff's intentional and/or negligent infliction of emotional distress claim, this court lacks subject matter jurisdiction over the claim.  See Saul, 928 F.2d at 843 (CSRA preempts intentional infliction of emotional distress claim); Lehman, 779 F.2d at 526-28 (same).  Accordingly, plaintiff's emotional distress claim will be dismissed.

### ii. FECA

To the extent that plaintiff's claim may not properly be categorized as a personnel action under the CSRA, FECA provides the exclusive remedy for federal employees injured during the course of their employment.  5 U.S.C. § 8116(c); Reep v. United States, 557 F.2d 204, 207 (9th Cir. 1977).  Where a claim falls within the purview of FECA coverage, a district court lacks jurisdiction to hear the claim.  5 U.S.C. § 8116(c); Sheehan v. United States, 896 F.2d 1168, 1174 (9th Cir. 1990).

Injured employees must pursue their administrative remedies under FECA unless their injuries are clearly not covered

---

[3] Notably, plaintiff's former supervisor was directly involved in three of the four incidents that allegedly resulted in plaintiff's emotional distress. (Compare Pl.'s Resp. to Def.'s Mot. to Dismiss at 10 (setting forth the actions on which plaintiff's claim is based) (Docket No. 13), with FAC ¶¶ 11, 18-19 (naming plaintiff's former supervisor, Molly Kusik, in several incidents).)

11

by FECA. Reep, 557 F.2d at 208. If a plaintiff has already filed suit in district court and a substantial question as to FECA coverage exists, the district court will generally stay the action pending a determination by the Secretary of Labor. Id.

The Ninth Circuit has held that emotional or psychological injuries divorced from any claim of physical harm are not cognizable under FECA. Sheehan, 896 F.2d at 1174. Where, however, a plaintiff brings a claim for psychological harm resulting in physical injury, the claim falls within FECA's scope. Moe v. United States, 326 F.3d 1065, 1069 (9th Cir. 2003); see also Figueroa v. United States, 7 F.3d 1405, 1408 (9th Cir. 1993) (possible claim under FECA where emotional injuries were "tied to physical harm").

Here, plaintiff alleges her emotional distress resulted in "extreme stress and anxiety/panic attacks, depression, loss of sleep, headaches, paranoia, difficulties with focus and concentration, and further reduction in her cognitive abilities." (FAC ¶ 43.) Whether plaintiff's symptoms are physical injuries and eligible for redress under FECA is a determination that must be made by the Secretary of Labor before this court may exercise jurisdiction over plaintiff's emotional distress claim. See Newsome v. United States, No. CV-F-04-5335 LJO, 2006 WL 1153609, at *4 (E.D. Cal. Apr. 28, 2006). Thus, even if plaintiff's claim was not preempted by the CSRA, plaintiff's claim would be dismissed or stayed pending administrative review. See Reep, 557 F.2d at 208.

    c. <u>Breach of Implied Covenant of Good Faith and Fair Dealing Claim</u>

by FECA. Reep, 557 F.2d at 208. If a plaintiff has already filed suit in district court and a substantial question as to FECA coverage exists, the district court will generally stay the action pending a determination by the Secretary of Labor. Id.

The Ninth Circuit has held that emotional or psychological injuries divorced from any claim of physical harm are not cognizable under FECA. Sheehan, 896 F.2d at 1174. Where, however, a plaintiff brings a claim for psychological harm resulting in physical injury, the claim falls within FECA's scope. Moe v. United States, 326 F.3d 1065, 1069 (9th Cir. 2003); see also Figueroa v. United States, 7 F.3d 1405, 1408 (9th Cir. 1993) (possible claim under FECA where emotional injuries were "tied to physical harm").

Here, plaintiff alleges her emotional distress resulted in "extreme stress and anxiety/panic attacks, depression, loss of sleep, headaches, paranoia, difficulties with focus and concentration, and further reduction in her cognitive abilities." (FAC ¶ 43.) Whether plaintiff's symptoms are physical injuries and eligible for redress under FECA is a determination that must be made by the Secretary of Labor before this court may exercise jurisdiction over plaintiff's emotional distress claim. See Newsome v. United States, No. CV-F-04-5335 LJO, 2006 WL 1153609, at *4 (E.D. Cal. Apr. 28, 2006). Thus, even if plaintiff's claim was not preempted by the CSRA, plaintiff's claim would be dismissed or stayed pending administrative review. See Reep, 557 F.2d at 208.

    c. <u>Breach of Implied Covenant of Good Faith and Fair Dealing Claim</u>

The Tucker Act, 28 U.S.C. § 1491, grants the United States Court of Federal Claims jurisdiction "to render judgment upon any claim against the United States founded upon . . . any express or implied contract with the United States . . . ." 28 U.S.C. § 1491(a)(1). "The Court of Federal Claims possesses exclusive jurisdiction of claims arising under the Tucker Act in excess of $10,000."[4] United States v. Park Place Assocs., 563 F.3d 907, 927 (9th Cir. 2009).

This court thus lacks jurisdiction over contract-based claims against the United States. Tuscon Airport Auth. v. Gen. Dynamics Corp., 136 F.3d 641, 646-47 (9th Cir. 1998). The implied covenant of good faith and fair dealing is a covenant implied in law in the parties' contract. Bakker v. Thunder Spring-Wareham, LLC, 141 Idaho 185, 192 (2005). Breach of the implied covenant results in contract damages, not tort damages. Id. Accordingly, plaintiff's claim for breach of the implied covenant of good faith and fair dealing must be dismissed for lack of subject matter jurisdiction. See Kenney Orthopedic, LLC v. United States, 88 Fed. Cl. 688, 703-04 (Fed. Cl. 2009) (Court of Federal Claims has jurisdiction over claim for breach of covenant of good faith and fair dealing).

B. <u>Defendant's Request to Strike Portions of Plaintiff's FAC</u>

---

[4] A separate provision confers on district courts concurrent jurisdiction over claims against the United States for less than $10,000. 28 U.S.C. 1346(a)(2). Plaintiff may satisfy this provision and obtain jurisdiction over her contract claim in this court by waiving her right to receive more than $10,000. Marceau v. Blackfeet Hous. Auth., 455 F.3d 974, 986 (9th Cir. 2006), readopted on reh'g, 540 F.3d 916, 929 (9th Cir. 2008).

13

Defendant's motion to dismiss includes requests to strike various portions of plaintiff's FAC pursuant to Rule 12(f) and to "dismiss" specific paragraphs pursuant to Rules 12(b)(6) and 8(a). The court will treat these requests as a motion to strike.

Motions to strike are governed by Federal Rule of Civil Procedure 12(f), which allows the court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The purpose of the rule is to avoid the costs that accompany litigating spurious issues by dispensing with those issues prior to trial. Sidney-Vinstein v. A.H. Robins Co., 697 F.2d 880, 885 (9th Cir. 1983). "Motions to strike are generally viewed with disfavor and are not frequently granted. Courts must view the pleading under attack in the light more favorable to the pleader." Garcia ex rel. Marin v. Clovis Unified Sch. Dist., No. 1:08-CV-1924 AWI SMS, 2009 WL 2982900, at *23 (E.D. Cal. Sept. 14, 2009) (citation omitted). "[E]ven when technically appropriate and well-founded, Rule 12(f) motions often are not granted in the absence of a showing of prejudice to the moving party." Hernandez v. Balakian, No. CV-F-06-1383 OWW DLB, 2007 WL 1649911, at *1 (E.D. Cal. June 1, 2007).

Defendant requests that the following allegations in the FAC be stricken: (1) references to alleged wrongful conduct that occurred prior to March 7, 2009;[5] (2) descriptions of

---

[5] A plaintiff seeking redress under the Rehabilitation Act must exhaust her available administrative remedies within forty-five days of the claimed wrongful act. 29 C.F.R. §

14

plaintiff's disability as "perceived" or "as-regarded";[6] and (3) references to retaliation, the Family Medical Leave Act ("FMLA"), and the Health Insurance Portability and Accountability Act ("HIPAA").[7]

The court is not convinced that inclusion of these allegations is redundant, immaterial, impertinent, or scandalous. Simply because a particular word, phrase, or fact in a complaint might not entitle plaintiff to recover does not bar plaintiff from asserting additional historical or background information. Accordingly, the court will deny defendant's motion to strike these allegations.

IT IS THEREFORE ORDERED that:

(1) Defendant's motion to dismiss be, and the same hereby is, DENIED as to plaintiff's claims for disability discrimination and failure to accommodate under the Rehabilitation Act, and GRANTED as to plaintiff's claims for wrongful discharge, intentional and/or negligent infliction of emotional distress, and breach of implied covenant of good faith and fair dealing; and

(2) Defendant's request to strike portions of the FAC be,

---

1614.105(a). Plaintiff's first alleged contact with the EEOC occurred on April 21, 2009, forty-five days after March 7, 2009. (FAC ¶ 14.)

[6] In the Ninth Circuit, there is no duty to accommodate an employee who is merely "regarded" as having a disability. Kaplan v. City of N. Las Vegas, 323 F.3d 1226, 1232-33 (9th Cir. 2003). Plaintiff has also alleged, however, that defendant knew that she was disabled. (See FAC ¶ 11.)

[7] Plaintiff does not bring an independent cause of action for retaliation or violations of the FMLA or HIPAA.

15

and the same hereby is, DENIED.

DATED:  July 26, 2011

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE